# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

CARLOS SARMIENTO,                    )
                                     )
      Petitioner,                )
                                     )    Case No. 15-0824-CV-W-ODS-P
      vs.                        )
                                     )
RONDA PASH,                          )
                                     )
      Respondent.                )

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 convictions and sentences for first-degree murder and armed criminal action, which were entered in the Circuit Court of Clinton County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. 11-5. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied without an evidentiary hearing (Doc. 25-1, pp. 21-27), and that denial was affirmed on appeal therefrom (Doc. 11-9).

## Statement of Facts

In affirming Petitioner's convictions, the Missouri Court of Appeals, Western District, set forth the following facts:

> On February 17, 2009, at 1:37 a.m., Sarmiento called 911 to report the death of his roommate, Lance Davis. He told the dispatch operator he had been awakened by a noise and found Davis lying on the floor. Sarmiento said he thought Davis had been hit with a hammer.

> Missouri Highway Patrol Trooper Jonathan Lynch and Deputy John Watson responded to Sarmiento's residence located in Jamesport, Missouri. They found Sarmiento outside still speaking with the 911 operator on the phone. He appeared intoxicated. The officers told him to wait outside while they went in to secure the property and assess the scene.

The officers found Davis lying face down on top of a broom in the dining room area. His body was cold to the touch and there was a laceration to his jaw. A pool of dark red blood was on the floor by his head, and his face was "forming" to the floor. It appeared Davis had been deceased for some time.

There were no signs of a struggle, but the officers observed a hammer lying on the breakfast bar just above Davis's body. It stood out because it was clean while other items on the counter appeared dirty and in disarray. On the bar, there was also a bloody towel, which was wet as if it had been used by someone washing their hands.

Deputy Watson noticed blood on Sarmiento's pants. After administering the *Miranda* warning, Deputy Watson asked Sarmiento: "What did you do? Hit him in the head with the hammer?" Sarmiento said: "Yeah," then immediately said, "No." Watson asked, "What did you two do? Get into a fight?" Sarmiento said: "Yeah," then immediately said "No."

An autopsy revealed that Davis died of blunt trauma to the head. He had been hit on the back of the head with a hammer resulting in a fractured skull and bleeding into the brain. He also had a fractured jaw. The two marks on his cheek and underlying jaw fracture were consistent with being hit with the "claw" side of a hammer.

DNA testing was conducted on the hammer, the bloody towel, and Sarmiento's pants. The blunt side of the hammer had a partial DNA profile consistent with Davis's DNA. The blood on the towel and on Sarmiento's clothing was consistent with Sarmiento's DNA.

Doc. 11-5, pp. 4-5.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Discussion**

Petitioner asserts two grounds for relief: (1) there was insufficient evidence to support his convictions; and (2) trial counsel was ineffective for failing to investigate a previously-reported shooting of Davis, which Petitioner argues is evidence that another individual had motive to kill Davis.  Doc. 15, pp. 9-10.[2]  Respondent contends that Ground 1 is without merit and that Ground 2 is procedurally defaulted.  Doc. 23, pp. 1-5.

*I. Ground 1 is without merit.*

In Ground 1, Petitioner asserts that there was insufficient evidence to support his convictions.  Doc. 15, p. 9.  Claims of insufficient evidence to support a verdict face "a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012).  The first layer of deference is on direct appeal, where "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'"  *Id.* (quoting *Cavazos v. Smith,* 565 U.S. 1 (2011)).  A second layer of deference then applies on habeas review, where "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court."  *Id.*  Rather, "[t]he federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Id.*

The Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> A person commits murder in the first-degree if "he knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1.2 "Deliberation" required for conviction for murder in the first degree is defined as "cool reflection for any length of time no matter how brief[.]" Section 565.002(3).
>
> . . . .
>
> Sarmiento's factual arguments contravene our standard of review, which requires us to view the record in a light most favorable to the verdict and disregard all contrary evidence. While Sarmiento did call 911, he told the dispatcher that he

[2] This Court's March 22, 2016, Order granted Petitioner's motion to amend petition and explained that this case would proceed on the two amended grounds for relief set forth therein.  Doc. 20.

believed Davis had been hit with a hammer. The statement revealed his knowledge about the cause and circumstances of the murder, even though the officers arriving on the scene saw nothing obvious to indicate that the hammer was the murder weapon. In fact, one of the officers testified he initially thought Davis was a stabbing victim because of his visible wounds. The wound to the back of Davis's head was hidden from immediate view.

The presence of Sarmiento's DNA on the bloody towel also provided evidence concerning his knowledge of and possible involvement in the crime. The murder weapon, a hammer, was found near Davis's body on the breakfast bar. It was the only clean item on the counter top and the bloody towel was lying nearby. The proximity of these items and the presence of Sarmiento's DNA support an inference that Sarmiento used the damp towel to clean the hammer and conceal evidence of his involvement in the murder.

The State presented additional evidence to prove that Sarmiento caused Davis's death. When Deputy Watson initially questioned him about the murder, Sarmiento admitted that he hit Davis in the head with a hammer after they got into a fight. Sarmiento quickly retracted his admission, but the jury was entitled to believe all, some, or none of his statements in arriving at its verdict. *State v. Wolfe,* 344 S.W.3d 822, 834 (Mo. App. 2011). Sarmiento's admission alone, if deemed credible by the jury, could have provided sufficient evidence of his guilt on the murder charge. *See State v. Uptegrove,* 330 S.W.3d 586, 590 (Mo. App. 2011).

Circumstantial evidence further supports the jury's finding that Sarmiento committed the murder. There were no signs of a struggle, and no signs of an intruder. Sarmiento and Davis were roommates. Davis had apparently been sweeping the floor when he was struck twice with the hammer – once on the back of the head and once on the jaw. The jury could have inferred Davis was not frightened or surprised by someone and that the attack was unanticipated.

The evidence indicated Davis had been dead for a while before officers arrived. The jury could have believed Sarmiento had delayed reporting the death until he had time to clean up the murder weapon and himself. Further, assuming the jurors believed Davis had been dead for some time, they likely did not believe Sarmiento's claim that he had been awakened by the noise of an intruder who must have committed the murder.

Most of this evidence was also sufficient to prove the element of deliberation. Sarmiento need not have contemplated his actions for a long time as the State must merely show he had the opportunity to terminate the attack once it began. *State v. Smith,* 185 S.W.3d 747, 758 (Mo. App. 2006). Deliberation may be proven by indirect evidence and any reasonable inferences drawn from the circumstances surrounding the killing. *Id.* at 758-59.

Davis was hit at least twice by the hammer, causing lacerations to the jaw and a skull fracture. The head injuries caused bleeding in his brain and resulted in his death. We can infer deliberation from the number, severity, and location of Davis's wounds. *Id.*

The devastating blow to the back of Davis's head suggests he was defenseless and did not anticipate the attack. The evidence indicated that Sarmiento approached Davis from behind and there was no sign of a struggle or physical altercation before the attack. Sarmiento then delayed notifying authorities or seeking medical assistance for Davis until he cleaned up the murder scene. His planning of the attack when Davis did not expect it, his failure to seek immediate medical help, and his efforts to conceal his involvement in the murder, all support a reasonable inference of deliberation. *See State v. Moore,* 949 S.W.2d 629, 632-33 (Mo. App.1997) (there was evidence of deliberation when the defendant shot the victim in the back of head with no struggle, fled without seeking medical help, and discarded the murder weapon).

The evidence was sufficient to prove beyond a reasonable doubt that Sarmiento caused the murder of Davis after deliberation. Accordingly, we deny the point on appeal.

Doc. 11-5, pp. 6-9.

The Missouri Court of Appeals' resolution of Ground 1 is not objectively unreasonable. In his reply, Petitioner asserts the following: his statement to Deputy Watson was not a "full-blown confession, but, rather, a muddled statement from a man with comprehension issues and a tenuous grasp on the English language;" he acted without consciousness of guilt because he called 911; and there was "absolutely no physical evidence linking [him] to the homicide." Doc. 26, p. 2. In light of the inculpatory evidence set forth above, these assertions are insufficient to establish that the state court findings on Ground 1 are objectively unreasonable. Instead, the state appellate court reasonably applied the correct standard before determining that the jury could have concluded beyond a reasonable doubt from the evidence presented at trial that Petitioner was guilty. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that

conclusion." *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002), *cert. denied*, 537 U.S. 886 (2002) (citing *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)). Insofar as Petitioner argues that the jury should not have believed his admissions to Deputy Wilson, credibility determinations are left for the state court to decide. *Graham*, 728 F.2d at 1540.

Because the state court's determinations as to Ground 1 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 1 will be denied.

### II. Ground 2 is without merit.

In Ground 2, Petitioner contends that trial counsel was ineffective for failing to investigate a previously-reported shooting of Davis, which Petitioner argues is evidence that another individual had motive to kill Davis. Doc. 15, pp. 9-10. Respondent contends that Ground 2 is procedurally defaulted, in that Petitioner did not plead it sufficiently in his Rule 29.15 motion. Doc. 23, pp. 4-5. In his reply, Petitioner argues that the procedural default of Ground 2 should be excused because his claims were abandoned by counsel pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Doc. 26, pp. 5-6.

The Rule 29.15 motion court found that Ground 2 was unsupported with sufficient factual allegations regarding what information Petitioner's trial attorney failed to discover. Doc 25-1, pp. 24-25. In affirming the motion court's judgment, the state appellate court discussed the vague factual allegations and whether they stated a meritorious claim of ineffective assistance of counsel. Doc. 11-9, pp. 4-6. Because it is more judicially efficient to consider this ground on the merits rather than untangle the complexities of the procedural default issue, this Court will address Ground 2 on the merits. *See Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc), *cert. denied*, 528 U.S. 846 (1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy

sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

In order for Petitioner to successfully assert a claim for ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Western District, set forth the *Strickland* standard and denied Ground 2 as follows:

> Sarmiento's Rule 29.15 motion alleged that his trial counsel was ineffective in failing to investigate a previous shooting of his roommate, which could have provided evidence that someone else had a motive to kill the victim. To succeed on this claim of ineffectiveness based on inadequate investigation, Sarmiento was required to further allege what specific information counsel failed to discover, that a reasonable investigation would have disclosed that information, and that the information would have aided his defense. *Alhamoud* [*v. State*, 91 S.W.3d 119, 121 (Mo. App. 2002)]. Sarmiento's motion was deficient because it did not include any specific allegations as to what information his trial counsel failed to discover as a result of the inadequate investigation. Instead, the motion only asserted that competent counsel would have investigated and "presented to the jury" the fact that the previous shooting occurred, in order to show that "the victim had at least one enemy." The pleading was nothing more than an attempt "to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another." *See State v. Nash*, 339 S.W.3d 500, 513 (Mo. banc 2011) (citation omitted). Although the motion alleged that an investigation should have been

conducted, it failed to allege exactly what, if anything, such an investigation would have revealed.

Given the lack of specificity in the pleadings, it is unlikely that trial counsel could have presented evidence of the prior shooting to aid Sarmiento's defense. Evidence that a different person had the opportunity or motive to commit the crime is not admissible "without proof that such other person committed some act directly connecting him with the crime." *State v. Schaal*, 806 S.W.2d 659, 669 (Mo. banc 1991) (citation omitted). Sarmiento made no allegation that the prior shooting of the victim and the underlying murder were connected in any way. He did not even allege that an investigation would have uncovered evidence to establish a direct connection between the two events. *See Thomas v. State*, 665 S.W.2d 621, 624 (Mo. App. 1983) (movant must show that investigation "would have uncovered evidence which would have improved his trial position and that he was deprived of substantial evidence by counsel's neglect."). Without proof of a direct connection, any evidence related to the shooting incident – even if developed – would have been inadmissible. Thus, trial counsel's failure to investigate and present such evidence did not prejudice Sarmiento.

After a thorough review of the entire record, we find no error in the motion court's determination that Sarmiento's Rule 29.15 motion failed to allege specific facts warranting relief or showing that he was prejudiced by his trial counsel's conduct. Accordingly, the court properly denied his post-conviction motion without granting an evidentiary hearing. Sarmiento's sole point on appeal is denied.

Doc. 11-9, pp. 4-6 (alteration added).

The decision of the Missouri Court of Appeals is reasonable and is entitled to deference under § 2254(d). Due to the vague nature of Petitioner's factual allegations supporting Ground 2, it was not unreasonable for the state appellate court to find that Petitioner was not prejudiced by trial counsel's failure to investigate the prior shooting. Moreover, trial counsel's decision not to investigate and present evidence regarding such vague allegations can be considered a matter of strategy. *See Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury."); s*ee also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful);

*Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert. denied*, 522 U.S. 1129 (1998).

Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 2 will be denied.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, Petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

 /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 7, 2016.